# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON JOHNSON, | Case No. 1:19-cv-01584-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

On November 6, 2019, Plaintiff Leon Johnson ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 19.)

## II. BACKGROUND

On January 13, 2016, Plaintiff protectively filed an application for SSI payment, alleging he became disabled on December 3, 2015, due to acute pulmonary embolism, degeneration of both knees, hypertension, asthma, morbid obesity, obstructive sleep apnea ("OSA") treated with bilevel positive airway pressure ("BiPAP"), elevated troponin, and inability "to stand or walk for long." (Administrative Record ("AR") 45, 261, 290.) Plaintiff was born on December 29, 1970 and was forty-four years old as of the alleged onset date. (AR 285.)

### A. Relevant Medical Evidence[2]

#### 1. State Agency Physicians

On March 15, 2016, C. De la Rosa, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity ("RFC").[3] (AR 120–31.) Dr. De la Rosa opined that Plaintiff could: (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for four hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; (4) push and/or pull "unlimited, other than shown, for lift and/or carry"; (5) occasionally climb ramps/stairs, balance, stoop, kneel, crawl, and crouch; and (6) never climb ladders, ropes, and scaffolds. (AR 127–28.) Dr. De la Rosa also opined that Plaintiff should "[a]void even moderate exposure" to hazards (e.g., machinery, heights, etc.). (AR 128.) Upon reconsideration on August 24, 2016, another state agency physician, L. Bobba, M.D., reviewed the record and affirmed Dr. De la Rosa's findings.[4] (AR 133–44.)

///

///

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[4] The only difference between Dr. De la Rosa's and Dr. Bobba's opinions is that Dr. Bobba opined to the additional limitation that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, and gases. (AR 129, 142.)

### 2. Fresno County Jail

On November 1, 2017, Plaintiff presented for care at the medical clinic at the Fresno County Jail, complaining of bilateral shoulder pain that had been "constant for 5 months." (AR 497.) Treatment notes indicate that Plaintiff had a limited range of motion. (AR 497.) On examination, when Plaintiff was instructed by the medical provider to lift his arms to shoulder level, Plaintiff stated that he was unable to do so because of the pain. (AR 498.) Plaintiff was able to put his arms behind him, but could not touch his shoulders. (AR 498.)

### 3. California Institution for Men

On July 10, 2018, Plaintiff presented to the medical clinic at the California Institution for Men for knee osteoarthritis. (AR 569.) Treatment notes from that visit included the following notations: "**Canes Permanent** Standard, Do Not Dispense, Patient Already Has" and "**Walkers Permanent** Standard, Same Day[.]" (AR 569, 573, emphasis in the original.) The examining medical provider also noted that Plaintiff's "request for a walker . . . is not appropriate at present time[,] patient should continue walking as appropriate with a walking cane that he has at this time he is accommodated with." (AR 581.)

## B.  Administrative Proceedings

The Commissioner initially denied Plaintiff's application for SSI payment on April 14, 2016, and again on reconsideration on August 26, 2016. (AR 146–50, 153–58.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 161–63.) At the hearing on September 12, 2018, Plaintiff appeared via teleconference with counsel and testified before an ALJ as to his alleged disabling conditions.[5] (AR 38–78.)

### 1. Plaintiff's Testimony

Plaintiff testified he is unable to walk without the use of a cane. (AR 57–58.) According to Plaintiff, he has to elevate both of his legs above his waist every night to alleviate the swelling in his legs. (AR 60–61.)

### 2. Vocational Expert

The ALJ asked the Vocational Expert ("VE") to consider a person of Plaintiff's age,

---

[5] Plaintiff was incarcerated at the California Institution for Men at the time of the hearing. (AR 40, 49.)

3

education, and work experience. (AR 69.) The VE was also to assume this person could: lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for four hours in an eight-hour workday; sit for an unlimited period; never climb ladders, ropes, or scaffolding; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and had to avoid concentrated exposure to pulmonary irritants and hazards, temperature extremes, dampness, and vibration. (AR 68–69.) In response to whether such a person could perform any work in the national economy, the VE testified that such a person could perform light, unskilled jobs with an SVP of 2, such as agricultural produce sorter, DOT 529.687-186, ampoule filler (pharmaceuticals), DOT 559.685-018, retail marker, DOT 209.587-034, and pari-mutuel-ticket seller, DOT 211.467-022. (AR 69–71.)

The ALJ asked the VE, in a second hypothetical, to consider a person with the same limitations as those in the first hypothetical, with the exception that the person could perform only sedentary work. (AR 72.) The VE testified that, in addition to pari-mutuel-ticket seller and ampoule filler, the jobs of semiconductor dies loader, DOT 726.687-030, printer circuit taper, DOT 017.684-010, and table worker, DOT 739.687-182, all sedentary jobs with an SVP of 2, would be available to that person. (AR 72–73.)

In a third hypothetical, the ALJ asked the VE to consider a person with the same limitations as those in the second hypothetical, but with an additional limitation of needing a cane for walking more than ten yards per hour. (AR 73.) The VE testified that the jobs identified in the second hypothetical would still be available to such a person. (AR 73.)

**C.     The ALJ's Decision**

In a decision dated December 4, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–33.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 23–32.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 13, 2016, the application date (step one). (AR 23.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative joint disease of the bilateral knees; "exogenous obesity versus morbid obesity"; OSA treated with a BiPAP machines; bronchitis; possible internal derangement of the bilateral shoulders; acute coronary syndrome; non-occlusive

deep venous thrombosis; asthma; pulmonary hypertension; right heel bone spur; tachycardia; diffuse spondylosis of the thoracic spine; and a history of blood clots, pulmonary embolism, polysubstance abuse, depression, possible myocardial infarction, and marijuana dependence.  (AR 23.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 24.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He could sit without limitation in an 8-hour workday with normal breaks.  He could stand and/or walk 4 hours in an 8-hour workday with normal breaks.  This capacity most closely approximates a wide range of light work as defined in 20 CFR [§] 416.967(b): [Plaintiff] could occasionally climb ramps or stairs, but could not climb ladders, ropes, or scaffolds.  He could occasionally balance, stoop, kneel, crouch, or crawl.  He must avoid concentrated exposure to temperate extremes, wet or humid environments, vibration, pulmonary irritants, and hazards.  He must wear bilateral knee braces while at work.

(AR 25.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 26.)

The ALJ determined that Plaintiff had no past relevant work (step four).  (AR 23.)  The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically agricultural produce sorter, ampoule filler (pharmaceuticals), retail marker, pari-mutuel ticket seller, semiconductor dies loader, printed circuit layout taper, and table worker (step five).  (AR 31–32.)

On December 31, 2018, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on September 6, 2019.  (AR 6–11, 12–14.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

///

### III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

"However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

### B. Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he

burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff claims that substantial evidence does not support the ALJ's RFC assessment of Plaintiff's physical limitations, as "no medical professional assessed the impact of all Plaintiff's diagnoses and symptoms on his functionality." (Doc. 16 at 7–8.)  Furthermore, Plaintiff contends that the assessments of his limitations by the State agency non-examining medical consultants were "outdated" because they did not account for subsequent medical records.  (Doc. 16 at 6–8; Doc. 25 at 2–5.)  Accordingly, Plaintiff submits that the ALJ should have developed the record further and "obtain[ed] an assessment of Plaintiff's physical and mental limitations from a treating or examining source," rather than relying on "his lay opinion" of the subsequent medical evidence "to attempt to accommodate for Plaintiff's progressive and additional impairments." (Doc. 16 at 6–7; Doc. 21 at 2–4.)

The Commissioner counters that no duty to develop the record arose because the ALJ considered all the evidence in the record and there was no ambiguity in the evidence.  (Doc. 17 at 8–10.)  The Commissioner also maintains that the ALJ's RFC assessment was based on substantial evidence supported from inferences reasonably drawn from the record and should thus be affirmed. (Doc. 17 at 10–12.)

The Court addresses the parties' contentions below and finds that reversal is not warranted.

### A.     The ALJ Had No Duty to Develop the Record

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation.  The ALJ summarized record evidence spanning from 2015 through 2018 and found with the support of that record that Plaintiff had not established he is disabled.  (AR 26–30.)  The record contains what appears to be Plaintiff's complete treatment records that supported the ALJ's findings and did not present an

ambiguity or inadequacy. Notably, Plaintiff did not submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations. Because Plaintiff carries the burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record—that duty is triggered only where there is an inadequacy or ambiguity in the evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08–cv–01205–SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and the claimant's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are . . . disabled"). Indeed, when the ALJ asked Plaintiff's attorney at the hearing whether the record was complete, he responded, "It is." (AR 42.) *See Randolph v. Saul*, 2:18–cv–00555–CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete); *see also Findley v. Saul*, No. 1:18–cv–00341–BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (same).

Contrary to Plaintiff's assertion, an updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id*. (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole."). Plaintiff cites cases in which a duty to develop the record arose (*see* Doc. 16 at 7, 8; Doc. 21 at 4), but these were limited to situations where the subsequent "objective evidence suggest[ed] a condition that could have a material impact on the disability decision," *Molina v. Berryhill*, No. 2:17–cv–01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018), or where the records

consisted of "raw medical evidence," *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014). *See Escudero v. Comm'r of Soc. Sec.*, No. 1:18–cv–01136–EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (finding the ALJ improperly failed to develop the record where descriptions of some of the medical evidence post-dating the opining physicians' opinions was not "self-evident" and instead "appear[ed] to be very medical in nature and not susceptible to a lay understanding."); *Goodman v. Berryhill*, No. 2:17–cv–01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record documented "significant medical events relevant to plaintiff's physical condition.").

Here, the Plaintiff directs the Court's attention to three pages of evidence from two different medical records relating to his alleged need for a cane and a walker (AR 569, 573) and his shoulder impairments (AR 497). (Doc. 16 at 8.) These records, compared to those in the cases discussed above, are relatively straightforward, and, to some extent, based on subjective complaints similar to those discredited by the ALJ[6]. The first record cited by Plaintiff—treatment notes from Plaintiff's visit for knee osteoarthritis in July 2018—reflects that he has been using a cane for walking, which the ALJ acknowledged in his opinion (*see* AR 30), but does not establish that Plaintiff needs a walker, as he claims. (AR 569, 573.) Indeed, in the same set of treatment notes, the examining medical provider noted that Plaintiff's "request for a walker . . . is not appropriate at present time[,] [Plaintiff] should continue walking as appropriate with a walking cane[.]" (AR 581.) The second record cited by Plaintiff is a treatment note from November 2017 showing that Plaintiff was able to put his arms behind him, but when he was instructed to lift his arms to shoulder level, he stated he was unable to do so due to pain; Plaintiff was prescribed Tylenol for the shoulder pain[7]. (AR 497, 498.) Neither of these records establishes the existence of any new condition not assessed by the ALJ or a worsening condition that could have a material impact on the ultimate disability decision. The Court therefore finds that the ALJ was not obligated to further develop the record.

---

[6] The ALJ found that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 26.) Plaintiff does not challenge the sufficiency of the evidence supporting the ALJ's adverse credibility finding or the adequacy of the ALJ's reasons given to explain this finding. The Court therefore considers the ALJ's unchallenged credibility finding to be binding. *See, e.g.*, *Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

[7] *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

**B.     The ALJ Did Not Err in Formulating Plaintiff's RFC**

An RFC "is the most [one] can still do despite [his or her] limitations," and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin*., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (finding that the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that the plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

According to the record, the only expert medical opinions regarding Plaintiff's RFC are those of the State agency physicians, Drs. De la Rosa and Bobba. (AR 29–30.) The ALJ considered their opinions and assigned them "great weight," but also found that additional limitations were warranted "based on updated medical evidence and consideration of the record as a whole." (AR 30.) Plaintiff's alleges that, because the State agency physicians on whose opinions the ALJ relied did not consider subsequent records, the RFC was the result of the ALJ improperly imposing his own lay interpretation of the medical evidence and thus "legally deficient." (Doc. 16 at 8.) This argument is unavailing.

The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec*., No. 2:13–cv–0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

Here, the ALJ considered not only the opinions of the state agency physicians but also evaluated the objective medical evidence post-dating their opinions, including the evidence identified by Plaintiff pertaining to his shoulder impairment. (*See* AR 27–29; Doc. 16 at 7 (citing

AR 569 and 573).) The ALJ then interpreted that evidence, as he is charged to do, and formulated Plaintiff's RFC.[8] *See, e.g.*, *Mills*, 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and the plaintiff's own testimony in formulating an RFC."). For example, although the ALJ assigned "great weight" to Drs. De la Rosa's and Bobba's opinions that Plaintiff was limited to an RFC that "most closely approximates a wide range of light work," those opinions were not dispositive, and the ALJ ultimately formulated an RFC that included additional limitations. These limitations accounted for Plaintiff's musculoskeletal impairments, including the ALJ's finding that Plaintiff had "possible internal derangement of the bilateral shoulders," by restricting him from exposure to temperature extremes, wet or humid environments, and vibrations, in addition to requiring that he wear bilateral knee braces while working. (*See* AR 23, 25, 30.)

Plaintiff cursorily asserts that the ALJ failed to include limitations in his RFC based on his alleged need for a cane and walker, shoulder impairments, bilateral pitting edema, and need to elevate his legs above his heart. (Doc. 16 at 7.) The limitations based on the impairments raised by Plaintiff, however, are unsupported by the record.[9] As discussed above, the medical evidence does not support that Plaintiff needs a walker. Plaintiff's contention that the ALJ "wholly ignored" his shoulder impairments (*see* Doc. 16 at 7) is belied by the ALJ's finding that he has "possible internal derangement of the bilateral shoulders" and the ALJ's inclusion of restrictions accounting for Plaintiff's musculoskeletal impairments, beyond those opined by the State agency physicians (AR 23, 30). Plaintiff's asserted need to elevate his legs appears to be supported by his own testimony only (AR 60–61), which the ALJ discredited (*see* AR 26) and Plaintiff does not challenge; thus the ALJ was not required to include such a limitation in the RFC.[10]

In sum, the Court does not find error in the ALJ's reliance on the opinions of the State agency

---

[8] The ALJ's RFC assessment is also based on consideration of Plaintiff's subjective complaints, which, as noted above, the ALJ discredited (*see* AR 26) and Plaintiff does not challenge.

[9] Indeed, Plaintiff failed to include in his argument any accompanying citations to medical evidence in the record in support of his claim as to his bilateral pitting edema and need to elevate his legs. (*See* Doc. 16 at 8.)

[10] In any event, as the Commissioner notes (Doc. 17 at 11), Plaintiff testified that he elevates his legs at night (AR 61), so the ALJ's failure to include a limitation accommodating that need would be harmless, *Molina*, 674 F.3d at 1115, as Plaintiff would be able to elevate his legs during non-work hours.

physicians and further finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### C. Even if the ALJ Erred, Any Error is Harmless

In addition to bearing the burden of showing he is disabled, Plaintiff also has the burden of establishing that any error resulted in actual harm. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054–55 (9th Cir. 2012). An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115 (quotation marks and citations omitted)); *Garcia v. Comm of Soc. Sec.*, 768 F.3d 925, 932 & n.10 (9th Cir. 2014) (harmless error analysis applies where the ALJ errs by not discharging duty to develop record).

Here, even assuming the RFC was unsupported by substantial evidence because the ALJ failed to further develop the record as to certain findings made after the State agency review, Plaintiff fails to show prejudice. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Molina*, 674 F.3d at 1115. Specifically, Plaintiff fails to explain how either of the two records post-dating the State agency physicians' opinions that he identified, described above, would materially affect the ALJ's disability determination. Plaintiff's also fails to show any inconsistency between the evidence he identifies and his RFC, nor does he specifically explain what additional limitations should have been included in the ALJ's RFC determination.

With regard to Plaintiff's alleged need for a cane (*see* Doc. 16 at 8), the Court notes the ALJ found that Plaintiff's knee problems "are addressed conservatively with braces, a cane, and pain medication" (AR 30), but the ALJ did not include use of a cane in formulating Plaintiff's RFC, only the use of knee braces (AR 23). Even assuming the ALJ should have included the use of cane in Plaintiff's RFC, the Court finds any error to be harmless because such a limitation would not have changed the ultimate non-disability determination. The VE testified that even if Plaintiff required "a cane when walking more than 10 yards per hour," the sedentary jobs of semiconductor dies loader, printed circuit layout taper, and table worker would still be available. (AR 73.)

Plaintiff contends in his reply brief that the VE's testimony conflicted with the DOT because

"it is unclear" how the requirements of "frequent" or "constant" reaching, handling, and fingering for the identified jobs "could be completed while holding a cane." (Doc. 21 at 4–5.) The Court disagrees. The DOT does not expressly require bilateral reaching, handling, and fingering for the sedentary jobs of semiconductor dies loader, DOT 726.687-030, printer circuit layout taper, DOT 017.684-010, and table worker, DOT 739.687-182, and Plaintiff needs only one hand to hold a cane. *See Trujillo v. Colvin*, No. CV 15–5468–KES, 2016 WL 3453033, at *2 (C.D. Cal. June 20, 2016) ("Courts have routinely held that jobs requiring reaching, handling or fingering do not necessarily involve the use of both hands.") (collecting cases); *Pierre v. Colvin*, No. CV 15–2944–DTB, 2016 WL 492430, at *2 (C.D. Cal. Feb. 5, 2016) (finding no conflict where VE testified that a person with the claimant's limitations, requiring the use of a cane for ambulation, could perform the identified job, which required constant reaching, handling, and fingering); *McConnell v. Astrue*, No. EDCV 08-667 JC, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010) (holding that jobs requiring reaching and handling did not exceed the claimant's limitation to work with one hand when there was no bilateral requirement in the DOT for those positions. The VE's testimony thus did not conflict with the DOT.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Leon Johnson.

IT IS SO ORDERED.

| | |
|---|---|
| Dated:  **January 8, 2021** | /s/ *Sheila K. Oberto* |
| | UNITED STATES MAGISTRATE JUDGE |